# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LRI HOLDINGS COMPANY, LLC, d/b/a | ) | |
| LYNN ROBERTS INTERNATIONAL, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV7 |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| JACK BOWER, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the plaintiff's Motion (Doc. 5) to remand this matter to state court.  Plaintiff contends this court does not have subject matter jurisdiction pursuant to 18 U.S.C. 1332 because the amount in controversy does not exceed $75,000.

## BACKGROUND

Plaintiff (LRI) is a wholesaler which designs and purchases eyewear to sell to retailers.  In 2003, a predecessor to LRI entered into a business relationship with defendant (Bower) for the sale of eyewear to Wal-Mart Stores.  The business relationship between LRI and Bower ended in October 2008.

LRI filed this action for declaratory judgment in state court on December 4, 2008.  The complaint alleges that Bower orally agreed to act as LRI's independent contractor sales representative relating to sales of eyewear to Wal-Mart, and Bower was to be paid a commission of 5% of the gross sale price of the eyewear.  LRI terminated the contract effective October 10, 2008.  The nature of the parties' dispute is described by LRI in the complaint, as follows:

> A controversy has arisen between the parties as to [Bower's] status and money that [Bower] is entitled to receive following the termination of the parties' contract. [LRI] contends that [Bower] is an independent contractor sales representative, and it owes [Bower] nothing except for commissions on (a) goods delivered to Wal-Mart by October 10, 2008, but not yet paid for by Wal-Mart, and (b) orders for goods on file with [LRI] through October 10, 2008, but not yet filled or delivered to Wal-Mart.

> [Bower] claims his status was as a joint venturer and, as such, he is owed a share of
> profits from LRI on eyewear sales to Wal-Mart indefinitely.

(State Court Complaint ¶ 8, Doc. 1 -2 at p. 2/3).  LRI seeks a declaratory judgment determining that Bower was an independent contractor, and that LRI owes Bower nothing except for commissions on (a) goods delivered to Wal-Mart by October 10, 2008, but not yet paid for by Wal-Mart and (b) orders for goods on file with LRI through October 10, 2008, but not yet filled or delivered to Wal-Mart.  The allegations of the complaint do not include any dollar amounts.

In the Notice of Removal, Bower alleged that the amount in controversy meets the jurisdictional requirement because LRI "has acknowledged that it agreed with [Bower] to receive a commission of 5% of the gross sales which [Bower] will allege are commissions that exceed in value over $250,000."  (Doc. 1 at p. 2/3).

## LEGAL ANALYSIS

Pursuant to 28 U.S.C. § 1332(a), the federal district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000."  The proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum. *Bell v. Hershey Co.*, 2009 WL 465949 at *2, Case No. 08-2458 (8th Cir., Feb. 26, 2009). If the defendant seeks to invoke federal jurisdiction through removal, the defendant bears the burden of proving that the jurisdictional threshold is satisfied. *Id.*  "This can be a complex task where, as here, the plaintiff prefers to litigate in state court. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) ('The complication is that a removing defendant can't make the plaintiff's claim for him....')." *Id.*

Within the Eighth Circuit, the party seeking to remove must prove the requisite amount by a preponderance of the evidence. *Bell v. Hershey Co.*, 2009 WL 465949 at *2 (citing *Advance Am. Servicing of Ark., Inc. v. McGinnis,* 526 F.3d 1170, 1173 (8th Cir. 2008), and *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005)).  If the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand

is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount. *Id.* (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006)).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Wash. State Apple Adver, Comm'n,* 432 U.S. 333, 347 (1977). *Accord James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d at 833. The court, in its discretion, may consider materials outside the pleadings such as depositions or affidavits in determining whether the record demonstrates lack of subject matter jurisdiction. *Clark v. Ameritas Inv. Corp.*, 408 F. Supp. 2d 819, 824 (D. Neb. 2005).

Thus, Bower must first prove by a preponderance of the evidence that the value of the object of the litigation exceeds $75,000. In this regard, Bower has submitted copies of the complaint, Bower's answer and counterclaim, and the Affidavit of Jack Bower. (Doc. 10). In his answer, Bower denies that he was used by LRI as an independent contractor sales representative and avers that he entered into a joint venture with LRI for the purposes of eyewear sales to Wal-Mart and all of its subsidiaries. Bower's counterclaim alleges the following:

> In 2002 Keith Josephson, a duly authorized representative of [LRI], approached Defendant and requested assistance in presenting for sale eye wear products to Wal-Mart Inc. Subsequent to the meeting with Josephson [Bower] developed an idea to present a sun glasses product to Sam's Club Inc, a subsidiary of Wal-Mart Inc. During the fall of 2002 [LRI] provided [Bower] with some sample sun glasses based on a marketing idea created by [Bower]. In the Fall of 2002 [Bower] traveled to Bentonville, Arkansas and presented the sun glasses product to Sam's Club, Inc. It was not approved for purchase by Sam's Club Inc. During the presentation of the proposed sun glasses to Sam's Club, Inc. [Bower] discussed with a representative of Wal-Mart Inc. the purchase of reading glasses and asked for the opportunity to present a proposal and was advised that he could do so sometime in January 2003. A meeting was then set up for January 14, 2003 at Wal-Mart Inc.'s corporate headquarters in Bentonville, Arkansas. In preparation for the January 14 2003 meeting [Bower] conferred with Josephson regarding the eye ware products to be presented to Wal-Mart. Certain eye wear products of [LRI] were then provided to [Bower] and as a result of discussions between [Bower] and Josephson it was agreed

-3-

that [LRI] would assist Defendant in presenting the proposed eye wear products to Wal-Mart, Inc.

On January 14, 2003 Keith Josephson met [Bower] in Atchison, Kansas and they proceeded to drive to Bentonville, Arkansas for a meeting with Julie King, Wal-Mart Inc.'s buyer [of] eye wear. [Bower], when he was last employed by Wal-Mart Inc in 2000 was a Division Merchandise Manager and at one time supervised the division responsible for the purchase of sun glasses and reading glasses. Defendant was also a former supervisor of Julie King, both at Wal-Mart Inc. and at Pamida Inc. where both were employed.

[W]hile [Bower] and Keith Jacobson traveled from Atchison, Kansas to Bentonville, Arkansas an agreement was discussed and then entered into for a joint venture for the sale of eye wear to Wal-Mart Inc. After a discussion of the profits to be realized and the competitive pricing system imposed by Wal-Mart Inc. upon its vendors, it was agreed by Defendant and [LRI] that defendant would receive five percent (5%) of all sales revenue for purchases of eye wear by Wal-Mart Inc. Pursuant to the agreement, both express and implied, as confirmed by their subsequent acts, the principals to the above described joint venture, for their mutual benefit, shared a community of interest and common purpose to sell eye wear to Wal-Mart Inc. and each principal had an equal voice in the manner of the joint venture's performance and control.

As a direct and proximate result of the efforts of the principals to the above described joint venture the principals succeeded in obtaining approval for the purchase of reading glasses by Wal-Mart, Inc. with the first order being processed in 2003. The approximate total sales volume of eye wear to Wal-Mart, Inc., directly resulting from the joint venture heretofore described, for the time period of 2003 through October 2008 was approximately $7,400,000.00.

\* \* \* \*

Plaintiff has paid to defendant certain funds due to defendant pursuant to the terms of the joint venture heretofore described.

On or about October 10, 2008 [LRI] informed [Bower] that it was terminating [Bower's] alleged "sales representative position" and it would not pay defendant any monies for orders from Wal-Mart, Inc. received after November 30, 2008.

(Answer and Counterclaim, Doc. 8, at ¶¶ 13-19).

By affidavit (Doc. 10 -4), Bower states that he holds a bachelors degree and an MBA from Benedictine College, Atchison, Kansas. He has been involved in discount retail merchandising for

-4-

over 38 years and is a former management employee of Wal-Mart.  Due to his special knowledge of and relationship with Wal-Mart, Bower was able to secure purchase orders for eyewear from Wal-Mart, the total dollar value of which, as of the date of his affidavit[1], was approximately $7.4 million. Citing two sales replenishment reports generated by Wal-Mart on September 29, 2008 and/or "recent confirmed product orders" by Wal-Mart,  Bower estimates that orders will amount to not less than $2.9 million for the time period from December 2008 through November 2009.  His 5% share of revenue of the joint venture would be $145,000.  Bower claims he is owed a share of the revenue from the joint venture's sale of eyewear to Wal-Mart indefinitely.

In response LRI has offered the Affidavit of Samuel Keith Josephson (Doc. 14) who states that he asked Bower to assist him in the fall of 2002 to help LRI initiate an eyewear program at Wal-Mart.  According to Josephson, Bower's only role at that time was to introduce Josephson to Julie King.  Josephson later asked Bower to be an outside salesman for LRI, attending meetings with Wal-Mart and offering assistance to create sales.  Josephson states that Bower agreed to be paid a 5% commission by LRI on its eyewear sales to Wal-Mart.  He denies that there was any discussion of a joint venture with Bower.  During 2003, the first year LRI supplied eyewear to Wal-Mart, LRI paid Bower $92,020.43 in sales commissions.  From 2005 through August 2008, Bower also assisted LRI with order quality analysis through the Wal-Mart ordering system, RetaiLink.  Bower earned commissions[2] from replenishment sales amounting to $120,646.38 in 2004; $23,433.12 in 2005; $15,008.94 in 2006; and $24,944.14 in 2007.  In 2008 a new program and a one-time six-style basic replacement update were sold to Wal-Mart.  Bower assisted in these sales and continued to help LRI with order quality analysis until August 2008, when Wal-Mart began doing its own analysis.  Bower was paid a commissions of $75,273.60 in 2008.

Josephson states in his affidavit, signed on January 30, 2009, that there will not be renewals of eyewear after January 30, 2009, as Wal-Mart has "given notice" that the programs initiated with

---

[1]The affidavit was signed on January 19, 2009.

[2]The Forms 1099-MISC for the years 2003 through 2008 show that LRI paid these amounts of miscellaneous income (nonemployee compensation) to Bower.

-5-

Bowers' assistance in 2008 and 2003 "are being ended."  According to Mr. Josephson, Wal-Mart's final order will be for $294,786 in merchandise, not including a credit of $43,000 for defective merchandise and future credits for markdowns.

The facts establishing the jurisdictional amount must be determined as of the time of removal.  *See James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d at 831.  This case was removed to federal court on January 7, 2009.  At that time, the state court pleadings made no mention of Wal-Mart's alleged termination of the two eyewear programs, and there is no evidence that  Bower was aware of this development when he removed the case to federal court.

At the time of removal, LRI had filed a complaint requesting the court to determine the nature of the parties' business relationship.  Although LRI did not ask that its potential liability to Bower be limited to a certain dollar amount, the very action of filing the declaratory action shows that LRI wished to limit its future exposure to claims for commissions allegedly payable to Bower.  The court has considered the defendant's answer and counterclaim, and the parties' evidentiary affidavits to ascertain the basis for their claims and defenses, not to decide the merits of the case.  In this context, to place a value on the object of the litigation, the court should consider "'the immediate financial consequences of the litigation to the plaintiff.'"  *Kearney Area Ag Producers Alliance v. Delta-T Corp.*, 2003 WL 431609 at *2, Case No. 8:02CV56 (D. Neb., Feb. 24, 2003) (quoting *Ericsson GE Mobile Comm., Inc. v. Motorola Comm. & Elec., Inc.*, 120 F.3d 216, 220 (11th Cir. 1997)).  The court agrees with Bower that the value of the lawsuit to LRI is a declaration that LRI was not involved in a joint venture with Bower.  If Bower prevails on this issue, the immediate financial consequences to the plaintiff may well exceed $75,000.  The court finds, by a preponderance of the evidence, that Bower has shown that the amount in controversy "could, that is might, legally satisfy the amount in controversy requirement."  *James Neff Kramer Family Farm P'ship v. IBP, Inc.*, 393 F.3d at 831.

Remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount.  In this regard, Mr. Josephson's declaration that Wal-Mart has "given notice" that the programs initiated with Bowers' assistance in 2008 and 2003 "are being

-6-

ended" is not documented, was unknown at the time of removal, and is no less speculative and self-serving than any statements or information given by Mr. Bowers in support of his position.

While it may become legally certain during the course of this litigation that the value of LRI's claim does not exceed the amount of $75,000, *see James Neff Kramer Family Farm P'ship v. IBP, Inc.*, 393 F.3d at 831, the court finds that LRI has not yet proven to a legal certainty that the jurisdictional amount cannot be met.

For these reasons,

**IT IS RECOMMENDED** that plaintiff's Motion to Remand (Doc. 5) be denied.

Pursuant to NECivR 72.3, a party may object to a this Report and Recommendation by filing an "Objection to Report and Recommendation" within ten (10) days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED March 12, 2009.**

                                        **BY THE COURT:**

                                        **s/ F.A. Gossett**
                                        **United States Magistrate Judge**